1  **THE LAW OFFICE OF LAWRENCE H. KAY**
   **Lawrence H. Kay (038011)**
2  **7801 Folsom Boulevard, Suite 101**
   **Sacramento, California 95826**
3  **Telephone: 916-381-7868**
   **Facsimile: 916-381-7880**
4
   **Attorneys for Plaintiff**
5  **DPR CONSTRUCTION, INC.**

6

7

8

9                  **IN THE UNITED STATES DISTRICT COURT**

10                 **EASTERN DISTRICT OF CALIFORNIA**

11                          **—ooOoo—**

12  DPR CONSTRUCTION, INC.,               | CASE NO.

13              Plaintiff,                | APPLICATION TO CONFIRM
                                          | ARBITRATION AWARD (9 U.S.C. §9)
14      v.                                | AND APPLICATION TO VACATE
                                          | DEFENDANT'S ARBITRATION AWARD
15  PAINTERS AND ALLIED TRADES            | (9 U.S.C. § 10)
    DISTRICT COUNCIL 16 AND PAINTERS
16  AND ALLIED TRADES LOCAL UNION
    NO. 376
17              Defendants.               | Date:
                                          | Time:
18                                        | Dept:

19

20   **APPLICATION TO CONFIRM PROJECT LABOR AGREEMENT ARBITRATION**
21        **AWARD AND VACATE DEFENDANT'S ARBITRATION AWARD**

22       Plaintiff, DPR CONSTRUCTION, INC.  pursuant to 9 U.S.C. §9 hereby moves to

23  confirm an Arbitration Award by Gerald McKay the Permanent Arbitrator under the Genentech

24  Project Labor Agreement (PLA) and pursuant to 9 U.S.C. §10 vacate Defendant's Arbitration

25  Award.

26  //

27  //

28                                    - 1 -

**I**

**STATEMENT OF FACTS**

On October 31,  2005, Plaintiff was assigned and named a successor Construction Manager by Fluor NE, the previous Construction Manager on the Genentech Expansion Project Project Labor Agreement (See **Exhibit A**).

According to the Project Labor Agreement (PLA), the disputed work assigned to other crafts should be resolved under the jurisdictional dispute resolution procedure set forth in Article 15 of the PLA and not according to the grievance procedure of a local union. (See **Exhibit B**). On May 25, 2006, Defendant Local Union No. 376 filed a grievance against Plaintiff under its collective bargaining agreement regarding work being performed on the Genentech Inc. Plan Expansion Project ("PROJECT") by Oakridge Industries Inc. a  subcontractor for Plaintiff who had assigned work to crafts other than the Defendant (See **Exhibit C**).

Plaintiff was informed on June 26, 2006 that a grievance hearing with regard to the May 25, 2006 grievance was to be scheduled within 15 days before th Drywall Joint, Adjustment Board (See Copy of June 26, 2006 letter as **Exhibit D**).

On June 26, 2006, Plaintiff, notified the District Council it was referring this dispute to Gerald McKay the permanent arbitrator for the PLA and requested said matter be heard on July 19, 2006 (See copy of June 26, 2006 letter, **Exhibit E**).

On July 6, 2006, the Drywall Joint Adjustment Board convened to hear the May 25, 2006 grievance.  Lawrence H. Kay, counsel for DPR made a special appearance on behalf of DPR and advised the Drywall Joint Adjustment Board that it did not have jurisdiction to hear the May 25, 2006 grievance (See Declaration of Lawrence H. Kay, **Exhibit F**).

On July 6, 2006, the Drywall Joint Adjustment Board did hear the May 25, 2006 grievance and ruled that DPR had violated various provisions of the Norther California Drywall finishers Master Agreement and is responsible for full wages and benefits for all h ours worked by DPR's subcontractor Oakridge Industries, Inc. on the Genentech Project (See copy of Decision dated July 6, 2006, **Exhibit G**).

- 2 -

1    On July 19, 2006, pursuant to DPR's request a hearing was held by the PLA Arbitrator,

2    Gerald McKay and a decision and award was issued on July 25, 2006, (Copy of Arbitrator's

3    Decision and Award attached as **Exhibit H**).

4    <center>II</center>

5    <center>**AUTHORITY OF THE DISTRICT COURT TO CONFIRM
PROJECT LABOR AGREEMENT ARBITRATION AWARD**</center>

6

7    Under 9 U.S.C. §9 a District Court has the authority to confirm an arbitration award.  The

PLA Arbitrator's Award should be confirmed since it conforms with the procedures set forth

8    within the PLA and provides the parties with a clear process to resolve jurisdictional disputes

9    like the one in question.

10

11    PLA Arbitrator Gerald Mckay in his July 25, 2006 Award stated:

12    "The purpose of the Union in filing a grievance, under its own Collective
      Bargaining Agreement, was to find the Employer in violation of its subcontracting
13    provisions in order to put pressure on the Employer to subcontract the work with a
      painter contractor and have the work done by members of the Painters Union.
14    The Union's claim that its intent was simply to enforce its own subcontracting
      provisions in the contract is disingenuous, at best.  The only purpose to be served
15    by filing the grievance, as the Union did, was to force the Employer to reassign
      the work to the Painters.  The reassignment of work, which had already been
16    assigned to the laborers and the Cement Masons, is in essence a claim by the
      Painters that the work assigned was wrong and that the assignment should have
17    been made to the Painters.  This type of claim is referred to as a jurisdictional
      dispute, since the Laborers and the Cement Masons also claim the same work."
18

19    Furthermore, the Arbitrator went on to determine that the Union was attempting to use its

20    own contract to avoid the obligations under the PLA to follow the jurisdictional disputes

21    procedures set forth in the PLA.

22    "The Union's effort in doing so is a specific violation of the Project Labor
      Agreement that it will not engage in that kind of conduct.  When the Union filed a
23    grievance with its own Board of Adjustment under its own contract, it violated the
      Project Labor Agreement in doing so."
24

25    <center>III</center>

26    <center>**AUTHORITY OF DISTRICT COURT TO VACATE DEFENDANT'S
ARBITRATION AWARD**</center>

27

28    Under 9 U.S.C. §10, a United States District Court for the District in which an arbitration

<center>- 3 -</center>

1     award was made may make an order vacating the award upon application of any party to the

2     arbitration where (1) the award "was procured by corruption, fraud, or undue means;" (2) there

3     was "evident partiality or corruption in the arbitrators, or any of them;" (3) the arbitrators were

4     guilty of any "misbehavior" by which the rights of any party have been prejudiced; or (4) the

5     arbitrators "exceeded their powers or so imperfectly executed them that a mutual, final and

6     definite award upon the subject matter submitted was made." 9 U.S.C. §10.

7         Defendant's award should be vacated because Defendant's (JAB) "exceeded their

8     powers." 9 U.S. C. §10(a)(4). Defendant's JAB decided the dispute in question according to the

9     Defendant's collective bargaining agreement even though the dispute involved crafts that were

10     not parties to that agreement, including Laborers, Cement Masons and Roofers. At the time

11     Defendant held its arbitration, it was aware that this dispute had been referred to PLA Permanent

12     Arbitrator by DPR's counsel having made a special appearance (See Declaration of Lawrence H.

13     Kay, **Exhibit F**).

14         Defendant's award should be vacated because Defendant's JAB "Imperfectly executed"

15     their powers procedurally such that a "mutual, final and definite" award could not have been

16     made. 9 U.S.C. §10(a)(4). The dispute at issue involved crafts other than defendant, including

17     Laborers, Cement Masons and Roofers. Defendant's JAB claimed jurisdiction over the dispute,

18     and rejected plaintiff's objection to such jurisdiction. Because Plaintiff's objection was rejected,

19     the interest of those other crafts were not addressed in Defendant's arbitration award. Also,

20     because Plaintiff objected to Defendant's jurisdiction in the matter and its proceedings,

21     Defendant' arbitration was carried out without participation by Plaintiff. With Plaintiff absent

22     from the proceedings and the interests of the other crafts not being represented, a decision that

23     would have been "mutual, final and definite" was not possible.

24         The award is "imperfectly executed" on its face. Defendant's claim of jurisdiction, as

25     well as its other findings, are wholly conclusory, failing to state the facts upon which its

26     conclusions are based and without stating the facts that support its conclusions, and with no

27     consideration given to the rights or position of Plaintiff or any of the other crafts implicated in

28

<center>- 4 -</center>

1 the dispute. The significant bias reflected on the face of the award is proof that the award's

2 "partiality" was "evident." 9 U.S.C. §10(a)(2).

3      Defendant's award should be vacated because Defendant's grievance procedure unfairly

4 prejudiced the rights of Plaintiff. 9 U.S.C. §10(a)(3). Jurisdiction of the dispute in question falls

5 under the provisions of the PLA, as agreed to by both Defendant and Plaintiff. By hearing this

6 dispute and deciding it under the provisions of Defendant's collective bargaining agreement,

7 Defendant's JAB deprived Plaintiff of the benefits of its agreement under the PLA and its

8 grievance procedure.

9      Finally, Defendant's award should be vacated as it was procured by "undue means." 9

10 U.S.C. §10(a)(1). Defendant conducted its arbitration in spite of the fact that the dispute at issue

11 fell under the dispute resolution procedure of the PLA and made no effort to settle the

12 jurisdictional dispute before engaging in its own procedure. Defendant engaged in its arbitration

13 procedures contrary to Plaintiff's objection and without Plaintiff's participation. The procedure

14 and award was severely biased in favor of Defendant's position and with little regard to the other

15 interests involved in the matter.

16 <div align="center">IV</div>

17 <div align="center">**THE NINTH CIRCUIT COURT OF APPEAL'S DECISION IN HUBER, HUNT &**</div>
    <div align="center">**NICHOLS, INC. V. UNITED ASS'N  APPRENTICES OF THE PLUMBING AND**</div>

18 <div align="center">**PIPEFITTING INDUS., LOCAL 38 , 282 F.3D 746; IS CONTROLLING**</div>

19      On March 6, 2002, the Ninth Circuit in a unanimous decision ruled in a case with similar

20 facts to the case before the Court. In the Huber, Hunt & Nichols case, Huber, Hunt & Nichols

21 was the general contractor on the Pac Bell Ballpark Project. The Project was covered by a

22 Project Stabilization Agreement (PSA) similar to the PLA at Genentech. In both situations the

23 general contractors subcontracted work to subcontractors who performed work with crafts

24 signatory to the PSA or PLA. In the Huber, Hunt & Nichols case the Plumbers filed a grievance

25 against Huber, Hunt & Nichols for subcontractor violations under its Collective Bargaining

26 Agreement. In this case the Painters filed a grievance against DPR under their Collective

27 Bargaining Agreement for a subcontractor violation.

28

<div align="center">- 5 -</div>

1    The Court in Huber, Hunt & Nichols stated:

2    "The Project Stabilization Agreement recites an intent to prevent delays and
     promote efficiency by establishing grievance procedures for settling 'all
3    misunderstandings,, disputes or grievances which may arise' during construction
     of the ballpark.  Article 5 of the Agreement requires that jurisdictional disputes
4    [FOOTNOTE2] be decided by discussion between the adverse unions' local
     leadership or, failing that, their international leadership.  Article 6 requires that
5    non-jurisdictional disputes "concerning any application or interpretation of the
     Project Stabilization Agreement" be decided by a designated project-wide
6    arbitrator (the "Permanent Arbitrator").  Non-jurisdictional disputes concerning
     any application or interpretation of an Incorporated collective bargaining
7    agreement, in contrast, are to be decided according to that collective bargaining
     agreement's "applicable grievance procedure."  Local 38's collective bargaining
8    agreement specifies that grievances arising under it are to be decided by an
     arbitration committee, half of whom must be members of Local 38 (the "Local
9    Committee" or "Committee").

10   The Genentech PLA has language that makes it clear that the provisions of the PLA

11   supercede the local collective bargaining agreements Sections 3.2 and 3.9 of the PLA state:

12   " This Agreement represents the complete understanding of the parties and
     Employers shall not be required to sign any other local, regional, area or national
13   collective bargaining agreements, nor will provisions of nay other collective
     bargaining agreements apply to this Project except as may be specifically
14   referenced in this Agreement.  This Agreement is a self contained, stand alone
     labor agreement and shall not require reference to, or control by, any other
15   collective bargaining agreements, except as may be specifically referenced in this
     Agreement.
16
     This Agreement represents the complete understanding of the parties and none of
17   the provision in any local, regional, area or national collective bargaining
     agreement shall apply to the Project except as may be specifically referenced in
18   this Agreement.  It is understood that this is a self-contained stand along Project
     Labor Agreement (PLA) and that by virtue of having become bound to this
19   Agreement, neither the CM, Employer, general contractor or its subcontractors (at
     any tier) will be obligated to sign any other local, regional, area or national
20   agreement.  Where a conflict exists over the intent of this Section, it may be
     submitted to the JAC for review and for final resolution by the CM and the
21   involved Union." (Emphasis Added).

22   The facts in this matter are similar to the Huber, Hunt & Nichols case, whereby in each

23   case the defendants used their own grievance and arbitration procedure to circumvent the PSA or

24   PLA's jurisdictional dispute procedure.

25   The Court in Huber, Hunt & Nichols stated:

26   "After construction commenced, Local 38 filed a grievance against the General
     Contractor with the Local Committee.  Local 38 claimed that a subcontractor had
27   violated Local 38's collective bargaining agreement by assigning work to
     carpenters and laborers that should have been assigned to Local 38 pipefitters.

28
                                        - 6 -

1      [FOOTNOTE 3] Local 38 sought contract damages in the amount of lost wages.

2      In response, the General Contractor filed a grievance against Local 38 with the
       Permanent Arbitrator. The General Contractor claimed that Local 38's grievance
3      violated the Project Stabilization Agreement by bypassing the Agreement's
       Article 5 procedures for resolving jurisdictional disputes pursuant to Article 5
4      instead of by arbitration before the Local Committee. Each party denied that the
       other's grievance was arbitrable. Each refused to make an appearance in the
5      other's grievance proceeding. [FOOTNOTE4]."

6      The Court in Huber, Hunt & Nichols concluded that the PLA Arbitrator had the authority

7  to determine whether the dispute was jurisdictional. The court went on to state:

8      "We address whether the arbitrators had the power to arbitrate the matters before
       them. Arbitrability is generally a questions for the court, rather than the arbitrator,
9      except where a broad arbitration clause is susceptible to more than one
       interpretation on the question or arbitrability. United Food & Commercial
10     Workers Union, Local 770 v. Geldin Meat co., 13 F.3d 1365, 1370 (9th Cir. 1994);
       Southern Cal. Dist. Council of Laborers v. Berry Const., Inc. 984 F.2d 340, 344
11     (9th Cir. 1993). We conclude that only the Permanent Arbitrator had power to
       arbitrate. The text, structure and context of the Project Stabilization Agreement
12     assign to him the threshold determination whether or not a dispute is
       jurisdictional. The Permanent Arbitrator's award must be confirmed and the
13     Local committee's award vacated.

14     We decline to label the underlying dispute here as either a jurisdictional or a
       contractual dispute. Rather, we examine whether the overall dispute is arbitrable.
15     Berry, 984 F.2d at 343. When the Project Stabilization Agreement consigns all
       questions concerning the application or interpretation of the Agreement
16     "excluding jurisdictional disputes" to the Permanent Arbitrator, it is implicitly
       assigned to him the threshold determination whether a dispute is jurisdictional.
17     Under any other interpretation, a trip to court would be necessary whenever the
       parties disagreed, or even purported to disagree, whether a dispute was
18     "jurisdictional" in character. It would be impossible to force any party to the
       Project Stabilization Agreement into the Article 5 procedures for resolving
19     jurisdictional disputes without a court order." "[T]he arbitration clause would be
       swallowed up by the exception." United States Steelworkers v. Warrier & Gulf
20     Navigation Co., 363 U.S. 574, 584, 80 S.Ct. 1347, 1354, 4 L. Ed. 2d 1409 (1960).
       [FOOTNOTE 5].

21
22     Moreover, the Project Stabilization Agreement's broad arbitration clause
       explicitly assigns to the permanent Arbitrator all non-jurisdictional disputes
23     concerning the application or interpretation of the Agreement. The question of the
       character of the dispute in this cause turns on the application and interpretation of
24     the phrase "jurisdictional dispute" in Articles 5 and 6 of the Project Stabilization
       Agreement, not on the language of Local 38's collective bargaining agreement. It
25     is difficult to imagine an inquiry that more squarely "concern[s] the application or
       interpretation of the Project Stabilization Agreement" and not the local collective
       bargaining agreement.

26
27     Finally, the Project Stabilization Agreement contains provisions, such as Articles
       2.2 and 9.2, indicating that in any conflict between the Agreement and a local
28     collective bargaining agreement, the Project Stabilization Agreement trumps the

                                        - 7 -

1   local agreement.  Logic suggests that where, as there, one party seeks to have the
    permanent Arbitrator determine whether a certain dispute is jurisdictional and the
2   other seeks to have an arbitrator under a local collective bargaining agreement
    make the same determination, the Permanent Arbitrator under the Project
3   Stabilization Agreement should have the power to resolve the conflict."

4       Article 13 of the Genentech PLA specifically excludes questions of jurisdiction of work
    and Article 15.2 of the PLA states:
5
6       "All jurisdictional disputes between or among Unions signatory to this
        Agreement, shall be settled and adjusted according to the present Plan established
        by the Building and Construction Trades Department or any other plan or method
7       of procedure that may be adopted in the future by the Building and Construction
        Trades Department.  Decisions rendered shall be final, binding and conclusive on
8       the Employers and Unions, and all parties of this agreement." [Emphasis Added]

9       Section 15.3 requires:

10      "All jurisdictional disputes shall be resolved without the occurrence of any strike,
        work stoppage, slowdown or disruptions of any nature." [Emphasis Added]
11
        Based on the foregoing provisions, it is clear that the PLA required Defendant to utilize
12
    the jurisdictional dispute provisions to resolve its dispute with the other crafts and Plaintiffs.
13

14      The Court in Huber, Hunt & Nichols stated that:

15      'The Permanent Arbitrator had the power to determine that the work assignment
        dispute was jurisdictional and order Local 38 to pursue non-arbitral dispute
16      resolution under Article 5 of th project Stabilization Agreement.  The permanent
        Arbitrator's awards are final and binding upon the parties to the Agreement.
17      When Local 38 refused to obey the Permanent Arbitrator's award and continued
        to pursue its grievance before the Local Committee, Local 38 violated the terms of
18      the Project Stabilization Agreement.

19      As in Huber, Hunt & Nichols this Court should find that the PLA Arbitrator's Award is

20  final and binding on the defendants and their refusal to obey the award and pursue its grievance

21  was a violation of the PLA which should result in the vacating of the Defendant's Arbitration

22  Award

23                                    V

24                               CONCLUSION

25      For the foregoing reasons, Plaintiff requests the PLA Arbitrator's Award

26  be confirmed and that the Defendant's Arbitration Decision and Award be vacated and declared

27  to be of no force and effect.  Furthermore, pursuant to Section 13.2 of the PLA the costs and fees

28                                  - 8 -

1   of the PLA Arbitrator should assessed against the defendants.  In addition, attorney fees and costs

2   incurred by Plaintiff in having to move to confirm the PLA Arbitrator's Award and vacating the

3   Defendant's Arbitration Award should be assessed against the Defendants.

4

5   Dated:  September 28, 2006

6

7                                             THE LAW OFFICE OF
                                              LAWRENCE H. KAY
8
                                              By: _____
9                                                 LAWRENCE H. KAY, ESQ.
                                                  Attorneys for Plaintiff
10                                                DPR Construction, Inc.

11  R:\Production\3\0300-0399\339 DPR\339.2 Genetech PLA\Pleadings\App-Confirm and Vacate Arbitration-Award.wpd

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                        - 9 -