UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DPR CONSTRUCTION, INC.

           Plaintiff,

     v.

PAINTERS AND ALLIED TRADES
DISTRICT COUNCIL 16 AND
PAINTERS AND ALLIED TRADES
LOCAL UNION NO. 376,

           Defendants.
_____/

NO. CIV. S-06-2158 LKK/DAD

**O R D E R**

     This case involves awards made by two different arbitral bodies over the same disputed work assignment. Pending before the court is plaintiff's motion for summary judgment. Plaintiff seeks to confirm an award made by the Project Labor Agreement ("PLA") in favor of plaintiff and to vacate an award made by the Drywall Finishers Joint Adjustment Board ("DFJAB") in favor of defendants. Defendants do not oppose confirming the PLA arbitrator's award but oppose the court vacating the DFJAB decision, arguing that both awards may co-exist. The court resolves the matter on the papers and after oral argument. For the reasons set forth below, the

1

motion is granted.

## I. Facts[1]

Plaintiff, as Construction Manager of the Genetech Expansion Project, is party to a PLA entered into on July 28, 2004 by plaintiff's predecessor and by the defendant union. Plaintiff is also a signatory to the Northern California Drywall Finishers Master Agreement, a local collective bargaining agreement ("CBA") that allegedly prohibits plaintiff from subcontracting jobs to workers who are not a party to the agreement. Defendants claim that plaintiff subcontracted out the installation of an epoxy resin to a subcontractor who had not signed the Drywall Finishers Master Agreement. Because of this subcontract, defendants filed a grievance against plaintiff on May 25, 2006. The grievance was filed under the CBA and a hearing was scheduled by the Drywall Finishers Joint Adjustment Board ("DFJAB") for July 6, 2006.

A meeting was held between the parties on June 21, 2006, at which time they made their respective positions known. Defendants' position was that plaintiff was in violation of the CBA's subcontracting clause, while plaintiff insisted that the dispute was superceded by the PLA. On June 26, 2006, plaintiff was informed of the scheduled DFJAB grievance hearing. That same day, plaintiff notified defendants of its intention to refer the dispute to the permanent arbitrator for the PLA, and that it was requesting the matter be heard on July 19, 2006.

---

[1] The relevant facts are not in dispute.

On July 6, 2006, DFJAB heard the grievance and ruled that plaintiff was responsible to defendants for an amount equal to the wages and benefits paid to plaintiff's subcontractor who had actually done the work. Counsel for plaintiff appeared prior to the start of the meeting to state that the Board did not have jurisdiction over the grievance and left a letter to the same effect.

On July 25, 2006, the permanent arbitrator under the PLA, Gerald McKay, issued his decision and award, finding that the defendant was in violation of the PLA for attempting to enforce a subcontracting provision under the CBA by obtaining a decision from DFJAB. While Mr. McKay did not expressly vacate the DFJAB award, he did say that if the defendants sought to have the award enforced, they would be in violation of the PLA and subject to damages and costs incurred by plaintiff in defending "its rights to have that decision set aside." Pl.'s Mot., Ex. 8 at 7.

## II. Standard

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Secor Ltd. v. Cetus Corp., 51 F.3d 848, 853 (9th Cir. 1995).

Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings,

3

>     depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Secor Ltd., 51 F.3d at 853.

In attempting to establish the existence of this factual

4

1  dispute, the opposing party may not rely upon the denials of its
2  pleadings, but is required to tender evidence of specific facts in
3  the form of affidavits, and/or admissible discovery material, in
4  support of its contention that the dispute exists.  Fed. R. Civ.
5  P. 56(e); Matsushita, 475 U.S. at 586 n.11; see also First Nat'l
6  Bank, 391 U.S. at 289; Rand v. Rowland, 154 F.3d 952, 954 (9th Cir.
7  1998).  The opposing party must demonstrate that the fact in
8  contention is material, i.e., a fact that might affect the outcome
9  of the suit under the governing law, Anderson v. Liberty Lobby,
10 Inc., 477 U.S. 242, 248 (1986); Owens v. Local No. 169, Ass'n of
11 Western Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1992)
12 (quoting T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,
13 809 F.2d 626, 630 (9th Cir. 1987)), and that the dispute is
14 genuine, i.e., the evidence is such that a reasonable jury could
15 return a verdict for the nonmoving party, Anderson, 477 U.S. 248-
16 49; see also Cline v. Indus. Maint. Eng'g & Contracting Co., 200
17 F.3d 1223, 1228 (9th Cir. 1999).
18      In the endeavor to establish the existence of a factual
19 dispute, the opposing party need not establish a material issue of
20 fact conclusively in its favor.  It is sufficient that "the claimed
21 factual dispute be shown to require a jury or judge to resolve the
22 parties' differing versions of the truth at trial."  First Nat'l
23 Bank, 391 U.S. at 290; see also T.W. Elec. Serv., 809 F.2d at 631.
24 Thus, the "purpose of summary judgment is to 'pierce the pleadings
25 and to assess the proof in order to see whether there is a genuine
26 need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R.

1  Civ. P. 56(e) advisory committee's note on 1963 amendments); see
2  also Int'l Union of Bricklayers & Allied Craftsman Local Union No.
3  20 v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).
4       In resolving the summary judgment motion, the court examines
5  the pleadings, depositions, answers to interrogatories, and
6  admissions on file, together with the affidavits, if any.  Rule
7  56(c); see also In re Citric Acid Litigation, 191 F.3d 1090, 1093
8  (9th Cir. 1999).  The evidence of the opposing party is to be
9  believed, see Anderson, 477 U.S. at 255, and all reasonable
10 inferences that may be drawn from the facts placed before the court
11 must be drawn in favor of the opposing party, see Matsushita, 475
12 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654,
13 655 (1962) (per curiam)); See also Headwaters Forest Def. v. County
14 of Humboldt, 211 F.3d 1121, 1132 (9th Cir. 2000).  Nevertheless,
15 inferences are not drawn out of the air, and it is the opposing
16 party's obligation to produce a factual predicate from which the
17 inference may be drawn.  See Richards v. Nielsen Freight Lines, 602
18 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902
19 (9th Cir. 1987).
20      Finally, to demonstrate a genuine issue, the opposing party
21 "must do more than simply show that there is some metaphysical
22 doubt as to the material facts. . . . Where the record taken as a
23 whole could not lead a rational trier of fact to find for the
24 nonmoving party, there is no 'genuine issue for trial.'"
25 Matsushita, 475 U.S. at 587 (citation omitted).
26 ////

**IV. Analysis**

Plaintiff moves for summary judgement, asking that the decision of McKay, the Permanent Arbitrator under the PLA, be confirmed and that the decision of DFJAB be vacated.  Defendants do not oppose plaintiff's motion to confirm the McKay decision. That decision found that defendants violated the PLA when they filed their grievance with DFJAB.  Defendants also do not seek to confirm the DFJAB decision.  They do, however, argue that the court may not vacate that decision either.  Therefore, the only issue for the court to resolve is whether or not it may properly vacate the DFJAB decision.

The case relied upon by plaintiff, Huber, Hunt & Nichols, Inc. v. United Ass'n & Apprentices of the Plumbing & Pipefitting Indus., Local 38 ("Huber"), 282 F.3d 746 (9th Cir. 2002), controls the outcome of this case.  The relevant facts in Huber are substantially similar to those in the instant action.  In Huber, the general contractor on the Pacific Bell Park project subcontracted work to workers of one union to the exclusion of another.  Id. at 747.  The Plumbers union, whose workers had not been awarded the work, filed a grievance against the general contractor pursuant to their CBA.  Id. at 749.  As here, however, the parties in Huber were signatories to a project wide labor agreement, the Project Stabilization Agreement, that was to resolve disputes between the general contractor and various labor groups.  Id.  The Ninth Circuit held that the decision of the arbitrator pursuant to the project wide labor agreement had

to be confirmed, and that the award made pursuant to the aggrieved union's CBA had to be vacated. Id. at 749.

Defendants respond in three ways. First, defendants argue that because McKay chose not to vacate, doing so now would be an improper expansion of his award. Second, defendants note that McKay's decision was issued after the DFJAB decision was already rendered; accordingly, they were not acting in defiance of a decision by the PLA arbitrator. Third, defendants maintain that plaintiff failed to take preventative action to protect the arbitral process and that both awards, although inconsistent, should be allowed to stand.

**A.  Vacating the DFJAB Award Would Not Expand McKay's Award**

Vacating the DFJAB award would not expand McKay's decision; rather, it would give it effect, because only the district court -- not McKay -- possesses the authority to vacate an arbitration award. 9 U.S.C. § 10 (setting forth situations in which a court may vacate an arbitration award under the Federal Arbitration Act, or "FAA").[2] In addition, McKay's decision noted that defendants would be liable for costs incurred by plaintiff in defending "its right[] to have that decision set aside," Pl.'s Mot., Ex. 8, at 7, implying that plaintiff could enforce such a right in the appropriate forum. Accordingly, the court finds

---

[2] While the FAA is not directly applicable to disputes arising from labor contracts, Craft v. Campbell Soup Co., 177 F.3d 1083 (9th Cir. 1998), the Labor Management Relations Act, 29 U.S.C. § 185, authorizes federal courts to fashion a body of federal law to enforce CBAs, of which the FAA is part. Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 451 (1957).

8

that the Labor Management Relations Act, 29 U.S.C. § 185(a), in conjunction with the FAA, provides the court with the authority to vacate the DFJAB decision.

Defendants' reliance on <u>Louisiana Pac. Corp. v. Int'l Bd. of Elec. Workers</u> ("<u>Louisiana Pacific</u>"), 600 F.2d 219, 220 & 223-25 (9th Cir. 1979), is not to the contrary.  There, the Ninth Circuit upheld two contradictory awards from different arbitral boards, effectively obligating the General Contractor to pay two different sets of employees for the work done of one.  As an initial matter, the two decisions here are not merely duplicative (i.e., requiring a contractor to pay twice for the same work), which was the case in <u>Louisiana Pacific</u>.  Rather, McKay found that the very filing of the grievance under the CBA was itself a violation of the PLA agreement.  The two decisions here are therefore more hostile to one another than were the duplicative awards in <u>Louisiana Pacific</u>.

Furthermore, the <u>Huber</u> court expressly distinguished <u>Louisiana Pacific</u>, noting that it did not involve the type of "overarching, multiunion labor agreement" at issue in <u>Huber</u>, which "is designed to trump the local collective bargaining agreements when there is a conflict."  282 F.3d at 754, n.8.  Similarly, the present case also involves "an overarching, multiunion labor agreement" -- here, the Project Labor Agreement.  Indeed, even the <u>Louisiana Pacific</u> court distinguished itself from cases in which there was a mechanism in place for dealing with jurisdictional disputes.  600 F.2d at

225 (noting that "[a]n employer can presumably protect himself . . . by contracting with each union for trilateral arbitration in the case of jurisdictional disputes giving rise to a demand for arbitration") (internal quotation marks omitted).

Vacating the DJFAB decision is also sensible from a policy perspective. In the context of labor disputes, "arbitration is a substitute for industrial strife." Huber, 282 F.3d at 754 (internal quotation marks omitted). Allowing the award of one arbitral body to stand when it is inconsistent with the award made pursuant to a project wide agreement would give rise to the unrest and dissatisfaction that national labor policy seeks to prevent. Id. at 755. Accordingly, the court cannot confirm McKay's award without simultaneously vacating the DFJAB award.

**B. Order of Awards**

Next, defendants argue that because DFJAB reached its decision prior to McKay's decision under the PLA, the former did act in defiance of the latter. The court disagrees. The fact that defendants managed to be heard by DFJAB before plaintiff could resolve the dispute under the PLA does not demonstrate that defendants were not acting in defiance of the PLA. As a factual matter, plaintiff informed defendants prior to and on the day of the grievance hearing that the matter would be heard by McKay under the PLA. Furthermore, it would undermine the arbitral process if this court were to permit parties to race to an award and then plead ignorance to any future award that may be issued. Because defendants had notice of the pending hearing

1  before the general arbitrator, and because the PLA superceded
2  the CBA, defendants violated the PLA when they proceeded with
3  the DFJAB hearing.

4  **C. Plaintiff Was Not Required to Seek an Injunction**

5  Finally, defendants assert that vacating the DFJAB decision
6  would be inappropriate where plaintiff failed to seek an
7  injunction to stop DFJAB from hearing the grievance, and where
8  plaintiff waited a month after the filing of the grievance to
9  refer the matter to the permanent arbitrator.  The court
10 disagrees.  None of the cases cited by defendants requires a
11 party to seek an injunction in this situation; rather, they
12 merely indicate that an injunction is potentially available when
13 the arbitral process is threatened.  See Aluminum Workers v.
14 Consol. Aluminum Corp., 696 F.2d 437, 441 (6th Cir. 1982);
15 Teamster Local 299 v. U.S. Truck Co. Holdings Inc., 87 F. Supp.
16 2d 726 (E.D. Mich. 2000).

17 Defendants also cite to language in Louisiana Pacific for
18 the proposition that failure to take preventative action should
19 be a significant factor in the court's determination of whether
20 to vacate an award.  600 F.2d at 226.  That case is
21 distinguishable from the preventative action at issue here.  In
22 Louisiana Pacific, the Ninth Circuit found that the general
23 contractor's failure to contract for arbitration prior to a
24 jurisdictional dispute precluded it from later seeking judicial
25 relief.  Here, however, the plaintiff did, in fact, contract for
26 arbitration before the jurisdictional dispute arose in the form

of the PLA.

## IV. Conclusion

Plaintiff's motion for summary judgment is GRANTED.

IT IS SO ORDERED.

DATED: March 29, 2007.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

12